IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA       :
      :     CRIM. NO.   02-403
            v.            :
      :     CIVIL NO.    09-689
KOURTNEY DWAYNE KAMA       :

**SURRICK, J.**                                          **AUGUST  8 , 2014**

## MEMORANDUM

Presently before the Court is Petitioner Kourtney Dwayne Kama's pro se Habeas Corpus Motion Under 28 U.S.C. § 2255.   (ECF No. 115.)   For the following reasons, Petitioner's Motion will be denied.

## I.      BACKGROUND

During the summer of 2001, Petitioner engaged in a series of transactions with undercover law enforcement officers and confidential informants.   During the course of these transactions, Petitioner sold five bags of cocaine base containing 0.58 grams to an undercover police officer. Petitioner also engaged in a conspiracy to traffic in firearms, selling a Ruger GP100 .357 pistol and a box of ammunition to an undercover officer.   Petitioner was subsequently arrested and indicted by a federal grand jury on drug and weapons charges.

On February 25, 2005, Petitioner was found guilty by a jury of distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1), conspiracy to engage in the business of dealing firearms without a license, in violation of 18 U.S.C. § 371, and possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g) and 924(e).   (Gov't Resp. 2, ECF 119.)   On December 13, 2005, Petitioner was sentenced to a period of 262 months in prison, followed by six years of

supervised release.   (Judgment, ECF No. 104.)   On November 13, 2007, the Third Circuit Court

of Appeals affirmed Petitioner's conviction and sentence.   (USCA Judgment, ECF No. 111);

*United States v. Kama*, 251 F. App'x 121 (3d Cir. 2007).   On February 19, 2008, the Supreme

Court denied Petitioner's request for a writ of *certiorari*.   *Kama v. United States*, 552 U.S. 1223

(2008).

On March 27, 2009, Petitioner timely filed a pro se Motion to vacate his sentence pursuant

to 28 U.S.C. § 2255.   (Pet'r's Mem., ECF No. 115.)[1]   The Government filed its response on

December 18, 2009.   Petitioner filed a reply to the Government's submission on March 15, 2010.

(Pet'r's Resp., ECF No. 124.)

## II.   LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate,

set aside or correct a sentence "upon the ground that the sentence was imposed in violation of the

Constitution or laws of the United States, or that the court was without jurisdiction to impose such

sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise

subject to collateral attack."   28 U.S.C. § 2255(a).   Relief under this provision is generally

available "to protect against a fundamental defect which inherently results in a complete

miscarriage of justice or an omission inconsistent with the rudimentary demands of fair

procedure."   *United States v. DeLuca*, 889 F.2d 503, 506 (3d Cir. 1989).

While the court may in its discretion hold an evidentiary hearing on a Section 2255

petition, *Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989), such a hearing need not be held if

---

[1] We subject pro se pleadings to a liberal review.   *Estelle v. Gamble*, 429 U.S. 97, 106
(1976).   A pro se complaint, "however inartfully pleaded," is to be held to "less stringent
standards than formal pleadings drafted by lawyers."   *Haines v. Kerner*, 404 U.S. 519, 520
(1972); s*ee also Higgs v. Att'y Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011).

the "motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."   28 U.S.C. § 2255(b); *see also United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994).

## III.    DISCUSSION

Petitioner claims that he was denied effective assistance of counsel.   He claims:   (1) that counsel was ineffective for not informing him that he could enter an open guilty plea; (2) that counsel was ineffective for failing to properly argue against the Court's determination that Petitioner's prior convictions justified his classification as an Armed Career Criminal pursuant to 18 U.S.C. § 924(e); (3) that counsel improperly stipulated to the fact that the seized substance was cocaine base; and (4) that counsel was ineffective for failing, on direct appeal, to argue for a different assessment of Petitioner's sentence under Amendment 709 to the United States Sentencing Guidelines ("U.S.S.G.").   Petitioner also argues that he was denied a speedy trial in violation of the Sixth Amendment and the Speedy Trial Act.   Petitioner's claims are frivolous.

### A.    Ineffective Assistance of Counsel

To establish ineffective assistance of counsel in violation of the Sixth Amendment, a defendant must show that:   (1) his or her attorney's performance was deficient; and (2) the deficient performance prejudiced his or her defense.   *Strickland v. Washington*, 466 U.S. 668, 687 (1984).   To establish deficient representation, a defendant must show that counsel's performance "fell below an objective standard of reasonableness under prevailing professional norms."   *Buehl v. Vaughn*, 166 F.3d 163, 169 (3d Cir. 1999) (quoting *Strickland*, 466 U.S. at 688).   To establish prejudice, a defendant must show that "counsel's errors were so serious as to deprive him of a fair trial, a trial whose result is reliable."   *Strickland*, 466 U.S. at 687.   "It is not

enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 694.   Rather, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 695.   Under *Strickland*, counsel is presumed to have acted within the range of "reasonable professional assistance," and the defendant bears the burden of "overcoming the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689 (quotation omitted).   While a defendant has the right to effective assistance of counsel, courts have explained that the Constitution does not guarantee the right to a perfect trial.   *See Marshall v. Hendricks*, 307 F.3d 36, 85 (3d Cir. 2002) ("[T]he court is not engaging in a prophylactic exercise to guarantee each defendant a perfect trial with optimally proficient counsel, but rather to guarantee each defendant a fair trial, with constitutionally competent counsel.").

"To avoid the shoals of ineffective assistance, an attorney's judgment need not necessarily be right, so long as it is reasonable." *Gov't of the Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1435 (3d Cir. 1996) (quoting *United States v. McGill*, 11 F.3d 223, 227 (1st Cir. 1993)).   "Judicial scrutiny of counsel's performance must be highly deferential" as "there are countless ways to provide effective assistance in any given case." *Strickland*, 466 U.S. at 689.

In *Thomas v. Varner*, 428 F.3d 491 (3d Cir. 2005), the Third Circuit addressed how district courts should proceed in assessing whether an attorney's performance was constitutionally deficient under the first *Strickland* prong.   The Court held, *inter alia*, that:

> [S]imilar to instances in which a court disposes of an ineffective assistance of counsel claim by analyzing the prejudice prong without considering whether counsel's performance was deficient, it is appropriate for a court to dispose of a case in which conduct is objectively reasonable without considering counsel's strategy. . . . Put differently, no hearings as to counsel's strategy are necessary in

cases in which the conduct challenged is objectively reasonable, as courts can simply reject the claims on reasonableness grounds.

*Id.* at 501, n.10.

### 1.    *Failure to Accurately Advise Guilty Plea*

Petitioner argues that he was denied effective assistance of counsel because he was given insufficient and misleading information obstructing his ability to knowingly determine whether it was in his best interest to plead guilty.   Petitioner contends that if he had been adequately informed of how strong the Government's case was, if he had known that he had the option of an open guilty plea without cooperating with the Government, and if he had been assured of counsel's continuing representation notwithstanding his choice to plead, he would have pleaded guilty.   (Pet'r's Mem. 2.)   Petitioner also claims that counsel was ineffective for telling him that he faced a fifteen-year sentence, whether he went to trial or not.   (*Id.*)   Petitioner further submits that had he entered a plea of guilty, he would have received a reduced sentence under the U.S.S.G. for Acceptance of Responsibility and because of counsel's actions he did not receive this reduction.   (*Id.*)

When a defendant's ineffectiveness claim relates to entry of a guilty plea, the defendant "'must show that there is a reasonable probability that, but for counsel's errors, [the defendant] would have pleaded guilty and would not have insisted on going to trial.'"   *Davis v. United States*, 335 F. App'x 825, 826 (11th Cir. 2009) (quoting *Coulter v. Herring,* 60 F.3d 1499, 1504 (11th Cir. 1995)).   Clearly a defendant is "'entitled to the effective assistance of counsel in determining how to plead.'"   *United States ex rel. Caruso v. Zelinsky*, 689 F.2d 435, 438 (3d Cir. 1982) (quoting *Colson v. Smith*, 438 F.2d 1075, 1078 (5th Cir. 1971)).   Counsel may be deemed ineffective when the advice given is "so incorrect and so insufficient that it would undermine [the

defendant's] ability to make an intelligent decision."   *United States v. Day*, 696 F.2d 39, 43 (3d

Cir. 1992) (finding defense counsel ineffective for failing to give defendant sufficient information

about his career offender status, affecting his decision to plead guilty).   Prejudice may be shown

if a defendant unknowingly waives eligibility for a level adjustment for acceptance of

responsibility by going to trial, resulting in a higher sentence.   *See, e.g., United States v Booth*,

432 F.3d 542, 548-49 (3d Cir. 2005) (finding prejudice when the defendant was exposed to a

higher sentence by going to trial instead of pleading guilty).

Counsel is not ineffective, however, for failing to pursue a plea agreement when the

petitioner maintains his innocence and rejects the option of pleading guilty.   *United States v.*

*Gonzalez-Rivera*, 217 F. App'x 166, 169 (3d Cir. 2006); *see also United States v. Gordon*, 979 F.

Supp. 337, 341 (E.D. Pa. 1997) (holding that counsel is not required by the Sixth Amendment to

encourage a defendant to plead guilty when that defendant maintains innocence).   District courts

in this circuit have routinely rejected ineffective assistance of counsel claims related to the entry of

a guilty plea where "(1) the petitioner claimed his or her attorney never informed him or her about

an open plea, (2) the petitioner maintained his or her innocence throughout the proceedings, and

(3) the record belied the contention that the petitioner would have accepted a plea deal."   *Mines v.*

*United States*, No. 06-126, 2013 WL 6187185, at *5 (D.N.J. Nov. 26, 2013); *see also United*

*States v. Jackson*, No. 09-5255, 2010 WL 1688543, at *4 (E.D. Pa. Apr. 21, 2010) (rejecting

argument that counsel was ineffective when the petitioner maintained his innocence throughout

trial and the record reflected the petitioner's unwillingness to plead guilty); *Donna v. United*

*States*, No. 10-1607, 2011 WL 322636, at *7-8 (D.N.J. Jan. 31, 2011) (holding that the petitioner

could not show prejudice where, even assuming a plea deal had been inaccurately conveyed to the

petitioner, the petitioner maintained innocence throughout trial).

In this case, Petitioner maintained his innocence.   He went to trial and testified that he did not sell crack or guns to the police officer.   He testified that it was the confidential informant who sold the contraband to the officers.   He did testify however, that he and the informant had a plan to work together to "rip off" the officers.   This testimony was not only rejected by the jury, it earned Petitioner a two-point enhancement at sentencing for obstruction of justice.   (Sentencing Tr. 8-9, Gov't Resp. Ex. F.)   Petitioner clearly maintained his innocence during these proceedings.

In addition, there is no evidence in the record to support Petitioner's current retrospective opinion that he would have entered a plea of guilty had he accurately grasped how strong the government's case was, and if he had the option of accepting an open plea.   The record indicates that Petitioner had engaged in plea negotiations with the government, had rejected the idea of pleading guilty, and had decided to go to trial even before trial counsel Christopher Furlong had been appointed.   During one of the pretrial hearings, when the Court was trying to determine whether Petitioner was going to plead guilty or go to trial, the Court told Petitioner:   "You've had three different attorneys representing you.   The prospect of entering a guilty plea has been discussed with you probably for more than a year."   (Feb. 17, 2004 Hr'g Tr. 18 (on file with Court).)   In fact, Petitioner was offered two different plea agreements.   The first offer was a "straight" plea to all counts, which Petitioner rejected.   (*Id.*)   Furthermore, at the hearing to replace Mr. Furlong's predecessor, the Court said:   "[w]e had a trial in this matter scheduled in February and then it appeared that the matter was going to be a plea, but then we could not get through the plea colloquy. . . Mr. Kama is competent to stand trial, and so we're going to move

7

ahead to dispose of this case." (July 29, 2004 Hr'g Tr. 2 (on file with Court).) The record clearly establishes a series of failed plea negotiations and an unwillingness to plead guilty. There is nothing in the record to suggest that Petitioner would have accepted an open plea.

Petitioner claims that he was discouraged from pleading guilty because of counsel's advice that he would not receive a sentence below fifteen years. Counsel's advice was factually accurate given Petitioner's criminal history and his status as an Armed Career Criminal. As an Armed Career Criminal, he faced a mandatory minimum fifteen-year sentence under 18 U.S.C. § 924(e), whether he entered an open guilty plea or went to trial and was found guilty. (Gov't Resp. 5.) Absent cooperation with the government, entering a guilty plea would not have resulted in a sentence below the fifteen-year minimum. *See, e.g.*, *United States v. Winebarger*, 664 F.3d 388, 396 (3d Cir. 2011) (holding that "a court may not use factors unrelated to a defendant's assistance to the government in reducing the defendant's sentence below the statutory minimum"); *see also infra* Section III.A.2.

It is impossible to conclude, in light of Petitioner's testimony proclaiming his innocence and the record of failed plea negotiations, that Petitioner would have accepted an open plea and admitted guilt and that Petitioner was prejudiced by counsel's failure to advise him to enter an open guilty plea. "[S]ubjective and self-serving statements are insufficient to show a reasonable probability that, but for alleged counsel's errors," Petitioner would have pleaded guilty. *United States v. Morris*, 106 F. App'x 656, 659 (10th Cir. 2004); *see also Gordon*, 979 F. Supp. at 341 ("Lawyers must take clients as they find them, and the client who persists in his protestation of innocence would scarcely welcome advice from his champion that would assure his incarceration."). "[C]onclusory allegations of ineffective assistance of counsel do not raise a

constitutional issue in a federal habeas proceeding."   *Miller v. Johnson*, 200 F.3d 274, 282 (5th

Cir. 2000).

2.      *Failure to Argue Inapplicability of Armed Career Criminal Act*

Petitioner claims that counsel was ineffective for failing on appeal to contest the Court's

classification of him as an Armed Career Criminal.   (Pet'r's Mem. 8.)   The Court's designation

of Petitioner as an Armed Career Criminal mandated that he receive the minimum sentence of

fifteen years imprisonment under 18 U.S.C. § 924(e) and Section 4B1.4 of the U.S.S.G.

(Sentencing Memo. 11-12, Gov't Resp. Ex. B.)   Petitioner contends that counsel was ineffective

and should have argued that his 1997 conviction for possession of 4.1 grams of crack cocaine with

the intent to distribute was erroneously relied upon and did not meet the requirements to classify

him as an Armed Career Criminal.   (Pet'r's Mem. 9-10.)   Petitioner is simply wrong.

A person convicted of violating 18 U.S.C. § 922(g) who has already been convicted three

or more times of "a violent felony or a serious drug offense, or both," is subject to a mandatory

minimum sentence of fifteen years.   18 U.S.C. § 924(e)(1).   "Serious drug offense" is defined to

include both federal drug offenses and "an offense under state law, involving manufacturing,

distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for

which a maximum term of imprisonment of ten years or more is prescribed by law."   18 U.S.C. §

924(e)(2)(A)(ii).

Petitioner argues that one of his convictions for a felony controlled substance violation

under 35 Pa. Con. Stat. Ann. § 780-113(a)(30) does not meet the requirement of a "serious drug

offense" necessary to classify him as an Armed Career Criminal.   (Pet'r's Mem. 8-9.)   Petitioner

maintains that his 1997 conviction of Possession with Intent to Deliver was for 4.1 grams of

9

cocaine, which has an offense gravity score of seven with a maximum term of imprisonment of seven years.   (*Id.* at 10.)   This conviction, Petitioner argues, could therefore not have met the ten-year maximum term of imprisonment requirement of 18 U.S.C. § 924(e).   (*Id.* at 10-11.) Petitioner also contends that his conviction could not have been deemed a "serious drug offense" because he ultimately received a sentence of Motivational Boot Camp.   (*Id.* at 10.)   We are satisfied that counsel was not ineffective for failing to raise this argument.

It is the "maximum term of imprisonment" for a conviction that determines whether the conviction is a "serious drug offense" for the purposes of § 924(e), not the guideline recommendations or the actual sentence to be served.   *See United States v. Howard*, No. 07-47, 2013 WL 5924876, at *6 (E.D. Pa. Nov. 5, 2013) ("[T]he statutory definition of 'serious drug offense'. . .   hinges not on the mandatory minimum that a crime carries but, rather, on the maximum sentence for the crime."); *see also United States v. Murillo*, 422 F.3d 1152, 1154 (9th Cir. 2005) ("[T]he maximum sentence is the statutory maximum sentence for the offense, not the maximum sentence available in the particular case under the [state] sentencing guidelines."); *United States v. Parry*, 479 F.3d 722, 724-25 (9th Cir. 2007) (rejecting argument that the state sentencing guidelines maximum of 90 months for an offense of Delivery of a Schedule II Drug takes precedence over the maximum sentence prescribed by state statute for purposes of Armed Career Criminal Act predicate offense).

The language of 35 Pa. Con. Stat. Ann. § 780-113(f)(1.1) dictates that any conviction in violation of 35 Pa. Con. Stat. Ann. § 780-113(a)(30) carries a maximum sentence of ten years. *See* 35 Pa. Con. Stat. Ann. § 780(f)(1.1); *see also United States v. Abbott*, 748 F.3d 154, 159-60 (3rd Cir. 2014) (holding that the defendant's conviction of Possession with Intent to Distribute

cocaine under 35 Pa. Con. Stat. Ann. §780-113(a)(30) is a "serious drug offense" for purposes of establishing a predicate offense for imposition of the fifteen-year minimum under the Armed Career Criminal Act). Petitioner's 1997 conviction was for a felony controlled substance charge in violation of 35 Pa. Con. Stat. Ann. § 780-113(a)(30). It carried a statutory maximum of ten years. Clearly counsel was not ineffective for failing to make an argument that was factually incorrect. Petitioner's claim is meritless.

> 3.    *Stipulation as to Nature of Seized Illicit Substance*

Petitioner claims that counsel was ineffective for stipulating that the controlled substance in question was "crack cocaine." (Pet'r's Mem. 13.)[2]  Petitioner claims that the Government's lab reports classifying the type of controlled substance are contradictory, and counsel should have argued that contradiction at trial. (Pet'r's Mem 14.)  Petitioner argues that the contradiction lies in the fact that the first report describes the substance as "compressed powder," *i.e.* cocaine, while the second refers to a finding of "cocaine base," *i.e.* crack. (*Id.* at 13-14.)

The first lab report, prepared on August 9, 2001, by the Pennsylvania State Police's Bureau of Forensic Services, said that the packets recovered from Petitioner "contained cocaine." (Pet'r's Mem. Ex. D.)  The second lab report, prepared by the same agency on June 13, 2002, clarified that the packets "contained cocaine base." (Pet'r's Mem. Ex. E.)[3]  At all times, the

---

[2] We note that the original stipulation between the government and Petitioner's counsel was done before Mr. Furlong was appointed to represent Petitioner. Petitioner's previous attorney, Mr. Cooper, signed off on the stipulation. (*See* Feb. 2, 2004 Hr'g Tr. (on file with Court).)

[3] Under Section 2D1.1 of the U.S.S.G., "cocaine base" and "crack" are used interchangeably:

> "Cocaine base," for purposes of this guideline, means "crack." "Crack" is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy,

substance in question was physically in compressed powder form, but chemically, it was determined to be "cocaine base."

    If counsel had refused to stipulate to the identification of the controlled substance as crack cocaine, the Government would have simply called the expert who tested the substance.   The expert would have testified as to the tests that he performed and the results of those tests.   The result was, of course, that it was cocaine base.   Moreover, all of the testimony at trial identified the substance as crack.   Detective Pasquale Leporace testified that the controlled substance being sold was crack cocaine.   The testimony of the cooperator, Warren Mayo, identified it as crack cocaine.   Petitioner offers no support for his contention that the substance was not crack cocaine and fails to demonstrate how counsel could have proven otherwise.

    In addition, Petitioner has failed to satisfy the second prong of *Strickland* by showing that *but for* counsel's actions the outcome would have been different and that he was prejudiced.   Due to his prior convictions, Petitioner was classified as a Career Offender under 4B1.1(a) of the U.S.S.G. and an Armed Career Criminal under 4B1.H.   (Gov't Resp. 8).   Whether the classification of the controlled substance was "crack" or "cocaine," Petitioner would still have qualified for Career Offender status for distribution of a controlled substance.   It was his status as a Career Offender and an Armed Career Criminal which resulted in his receiving an offense level of 34 under the U.S.S.G. and a mandatory minimum under § 924(e).   (Sentencing Tr. 15-16.)   A determination of cocaine instead of crack would not have affected his offense level or the length of his sentence.   Again, Petitioner's claim is meritless.

---

    -rock-like-form.

U.S.S.G. 2D1.1, note on drug quantity table (D).

4.      *Ineffective Appellate Representation*

Petitioner argues that his Sixth Amendment right to effective assistance of counsel was violated when counsel failed on appeal to address two specific arguments.   First, counsel was ineffective for failing to argue that Amendment 709 to § 4A1.2(a)(2) of the U.S.S.G. should have been applied at sentencing to consolidate two of his prior convictions, precluding him from the status of a career offender under § 4A1.2(a)(2).   This failure, Petitioner argues, resulted in a higher criminal history category and offense level, increasing the length of his sentence.   (Pet'r's Mem. 21.)   Second, Petitioner claims that counsel was ineffective for failing to argue on appeal that the Court abused its discretion by not affording enough weight to the §3553(a) factors when determining Petitioner's sentence.   (*Id*. at 18.)

> The U.S.S.G. list three criteria that must be met to classify a defendant as a career offender:
>
> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a) (2011).   "Federal Sentencing Guideline Amendment 709, which took effect in 2007, provided that any prior sentences resulting from offenses contained in the same charging instrument or imposed on the same day should be counted as a single sentence for the purpose of calculating a defendant's criminal history category."   *United States v. Neff*, 598 F.3d 320, 322 (7th Cir. 2009); *see also* U.S.S.G. 4A1.2(a)(2) (2007).   However, "[p]rior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest."   U.S.S.G. § 4A.1.2.(a)(2) (2007); *see also United States v. Jones*, No. 09-137-1, 2014 WL 1386328, at *7-8 (E.D. Pa. Apr. 8, 2014) (rejecting argument that two prior

convictions should be consolidated when they lack a connection and are separated by an intervening arrest); *Johnson v. United States*, No. 06-4475, 2007 WL 2033420, at *6 (D.N.J. July 10, 2007) (quoting U.S.S.G. § 4A1.2, app. n.3 (1993)) ("Prior convictions are not considered related if the offenses were 'separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense).'").   Amendment 709 does not impact this established sentencing principle.

"There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument."   *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).   It is undisputed that Petitioner's commission of prior offenses was separated by an intervening arrest.   The first case at issue—possession with intent to deliver a controlled substance—arose from an arrest on November 29, 1996.   (Gov't Resp. 12.)   The second case at issue—burglary—arose from an arrest on June 25, 1997.   (*Id*.)[4]   Petitioner does not challenge this fact, nor does he challenge the classification of each conviction as a crime of violence or a controlled substance offense.   Counsel was therefore not ineffective in failing to argue a statutory amendment that was not applicable.   *Johnson*, 2007 WL 2033420, at *7 ("Importantly, an attorney cannot be faulted for failing to pursue meritless or futile objections.").   Petitioner has failed to meet his burden under *Strickland*'s first prong.

Petitioner also claims that counsel was ineffective for failing to argue on appeal that this Court abused its discretion by refusing to adjust his sentence in light of the factors outlined in 18 U.S.C. § 3553(a).   (Pet'r's Mem. 17.)   Petitioner claims that an examination of the length of his

---

[4] The Court established during the sentencing hearing that for purposes of classifying the Petitioner as an Armed Career Criminal there was no dispute as to the separateness of Petitioner's convictions:   "the conviction with intent to distribute on 11-29-96 and the burglary on 3-13-97 are completely separate crimes.   Even though they were sentenced on the same day, they are completely separate crimes and are not related."   (Sentencing Tr. 15.)

pre-trial confinement and various health issues should have been grounds for a downward

departure.   (*Id.* at 18.)   Petitioner does not, however, specifically indicate how arguing such an

abuse of discretion on appeal would have affected his sentence.

An attorney is not ineffective for failing to raise on appeal every issue suggested by a

defendant.   *Jones v. Barnes*, 463 U.S. 745, 751 (1983).   Instead, appellate counsel is entitled to

"winnow[] out weaker arguments on appeal and focus[] on one central issue if possible, or at most

on a few key issues."   *Id*. at 751-52.   "Attorneys 'need not, and should not, raise every . . . claim

but rather may select among them in order to maximize the likelihood of success on appeal.'"

*United States v. Turner*, 677 F.3d 570, 577 (3rd Cir. 2012) (quoting *Showers v. Beard*, 635 F.3d

625, 634 (3d Cir. 2011)).   A defendant does not have "a constitutional right to compel appointed

counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional

judgment, decides not to present those points."   *Jones*, 463 U.S. at 751.

The standard of review for appeals related to § 3553(a) is abuse of discretion.   "[T]he

sentencing judge, not the court of appeals, is in a superior position to find facts and judge their

import under § 3553(a) in the individual case."   *United States v. Merced*, 603 F.3d 203, 214 (3d

Cir. 2010) (internal quotations omitted).   A district court's "decision to accord less weight to

mitigation factors than that urged by [the defendant] does not render the sentence unreasonable."

*United States v. Young*, 634 F.3d 233, 243 (3d Cir. 2011).   In fact, "[a] sentencing court need not

make findings as to each factor if the record otherwise makes clear that the court took the factors

into account."   *United States v. Lessner*, 498 F.3d 185, 203 (3d Cir. 2007).   Adoption of a

Pre-Sentence Investigation Report and its calculations can be sufficient to satisfy this

requirement.   *Id*.

In the instant case, the Court considered Petitioner's request for a downward departure. We concluded that Petitioner's extended pre-trial confinement resulted from his multiple requests for new attorneys.   We determined that a downward departure on those grounds would have been inappropriate.   (Sentencing Tr. 20-21).   In considering the § 3553(a) factors, the Court also heard from Petitioner's attorney, Petitioner's mother, and Petitioner.   (*Id.* at 21-25, 30-35).   We took into consideration the issues confronting Petitioner's family.   Nevertheless, in weighing these factors against the seriousness of Petitioner's crimes, the nature of his criminal history, and his complete lack of remorse as demonstrated by his testimony at trial, we concluded that a downward departure was not appropriate.   Protection of the public and deterrence were more important.   It was not unreasonable for counsel to decline to challenge Petitioner's sentence on these grounds.   Counsel certainly knew that any argument he could make challenging the Court's examination of Section 3553(a) factors would have been subject to this high level of deference. *See United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (explaining that a sentence must be affirmed "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided").   It was not unreasonable for counsel to have anticipated little chance of success on such an argument and to have focused on more palpable issues.   Counsel's exercise of professional judgment does not rise to the level of unreasonable under *Strickland*'s first prong and Petitioner's claims that he was deprived of his Sixth Amendment right to effective assistance of counsel are wholly devoid of merit.

**B.**      **Speedy Trial Act Claim**

Finally, Petitioner notes that his trial did not begin until nearly three years after his indictment, and argues that this delay violated the Speedy Trial Act, 18 U.S.C. § 3161(c)(1), and

16

the Sixth Amendment.   (Pet'r's Mem. 15.)   The Government argues that Petitioner's claim is procedurally defaulted and should be dismissed.   (Gov't Resp. 12.)   Petitioner does not reply to the Government's argument in his most recent submission.

A claim or argument challenging a defendant's conviction and sentence should be raised on direct appeal.   *See Bousley v. United States*, 523 U.S. 614, 621 (1998) (noting that the defendant's claims "can be attacked on collateral review only if first challenged on direct review").   An issue that could have been raised on direct appeal, but was not, is subject to procedural default.   *United States v. Frady*, 456 U.S. 152, 162-67 (1982); *United States v. Jenkins*, 333 F.3d 151, 154-55 (3d Cir. 2003).   The standard of review for a collateral attack on trial errors where there had been no contemporaneous objections is the "cause and actual prejudice standard."   *See Frady*, 456 U.S. at 167.   Such claims are waived unless the Petitioner can show either (1) actual innocence or (2) cause excusing the procedural default and actual prejudice resulting from the error.   *Bousley v. United States*, 523 U.S. 614, 622 (1998).   Acceptable examples of cause in this context are those that are "external to the defense," such as "interference by the state with the conduct of a defense or the previous unavailability of the factual or legal basis of a claim."   *Cristin v. Brennan*, 281 F.3d 404, 420 (3d Cir. 2002) (internal quotation marks omitted).   The "mere inadvertence of the petitioner or [his] counsel to take an appeal" is not cause to excuse a potential procedural default.   *Id*. at 420.   However, "ineffective assistance of counsel that rises to the level of a Sixth Amendment violation constitutes cause for a procedural default." *Hodge v. United States*, 554 F.3d 372, 379 (3d Cir. 2009).

Petitioner clearly cannot demonstrate actual innocence.   Petitioner must persuade us that, "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty

beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995); *see also Sweger v. Chesney*, 294 F.3d 506, 522-23 (3d Cir. 2002).   We note that Petitioner's first claim is premised on a willingness to admit his culpability where he laments not having pleaded guilty before trial. *See supra* Section III.A.1.   In addition, the evidence of Petitioner's guilt is overwhelming; there is no evidence pointing to Petitioner's innocence other than his own testimony at trial which was rejected by the jury.   Petitioner does not argue the existence of any other evidence of innocence.

As for establishing both "cause and actual prejudice," Petitioner has failed to point to any cause that would excuse his failure to raise a Speedy Trial Act claim, either at trial or on appeal. We will, however, briefly entertain the possibility that Petitioner wishes to argue that counsel was ineffective for waiving Petitioner's speedy trial.   (*See* Pet'r's Mem. 16.)[5]   A claim predicated upon ineffective assistance of counsel will not be procedurally defaulted.   *Massaro v. United States*, 538 U.S. 500 (2003) (noting that ineffective assistance claims are not defaulted if first raised in a § 2255 petition).   Such ineffective assistance of counsel claims do not need to meet the "cause and actual prejudice" standard, but" must show that counsel's performance was deficient, meaning that counsel made errors so serious as to deprive petitioner of the 'counsel' guaranteed by the Sixth Amendment."   *United States v. Holder*, No. 10-5453, 2011 WL 1838719, at *3 n.8 (E.D. Pa. May 16, 2011) (quoting *Strickland*, 466 U.S. at 687).

The Speedy Trial Act requires that a defendant be brought to trial "within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending,

---

[5] We entertain this allegation in the interest of liberally construing Petitioner's claim. Petitioner only briefly and generally alluded that counsel was ineffective for waiving Petitioner's speedy trial by stating "[m]y indictment should be DISMISSED with prejudice for violation of my right to a Speedy Trial based on…Mr. Furlong's errs [sic]."   (Pet'r's Mem. 16.)   Petitioner does not enumerate what such errors allegedly were.

whichever date last occurs."   18 U.S.C. § 3161(c)(1).   However, §3161(h)(7)(A) excludes from

that time:

> Any period of delay resulting from a continuance granted by any judge on his own
> motion or at the request of the defendant or his counsel or at the request of the
> attorney for the Government, if the judge granted such continuance on the basis of
> his findings that the ends of justice served by taking such action outweigh the best
> interest of the public and defendant in a speedy trial.

18 U.S.C. §3161(h)(7)(A).   In examining claims under the Speedy Trial Act, "[d]elays which are

caused by the defendant or his attorney weigh against finding a violation."   *United States v.*

*Garraud*, 434 F. App'x 132, 137 (3d Cir. 2011); *see also United States v. Fields*, 39 F.3d 439, 443

(3d Cir. 1994) (rejecting idea that defendants could seek dismissal of indictments based on their

own attorneys' requests for continuances under the Speedy Trial Act).   "Defendants cannot be

wholly free to abuse the system by requesting (h)(8) continuances and then argue that their

convictions should be vacated because the continuances they acquiesced in were granted."

*United States v. Lattany*, 892 F.2d 866, 883 (3rd Cir. 1992).

Petitioner's claim that his trial was delayed due to counsel's ineffective assistance is

meritless.   Petitioner's trial was delayed due entirely to Petitioner's own actions.   Those actions

were Petitioner's continual requests for new counsel and his on again off again plea negotiations.

On July 30, 2004, two years after his indictment and two attorneys later, we appointed Mr. Furlong

as Petitioner's third and final counsel pursuant to Petitioner's request.   (ECF No. 67.)   Following

that appointment, counsel requested numerous continuances and exclusions of time under the

Speedy Trial Act because the "ends of justice" would be served by allowing him ample time to

prepare for trial.   (*See* ECF Nos. 70, 75.)   We granted those Motions so as to ensure that

Petitioner's new counsel could effectively represent him.   *See United States v. Coleman*, Nos.

05-295, 10-2013, 2012 WL 1231800, at *4 (E.D. Pa. Apr. 12, 2012) ("Because defense counsel's readiness for trial was of paramount importance, counsel's requests for, and the Court's decisions to grant, 'ends of justice' continuances were reasonable.").   Petitioner fails to allege how counsel's actions fell below the threshold of reasonableness necessary to meet his burden under *Strickland's* first prong.

Petitioner has neither satisfied the first element of the "cause and actual prejudice" exception, nor has he established that counsel's actions were constitutionally ineffective. Accordingly, we reject Petitioner's Speedy Trial Act claim.

### C.      Certificate of Appealability

Finally, the Government requests an order that no certificate of appealability issue.

(Gov't. Resp. 14-15.)   The Third Circuit's Local Appellate Rules instruct:

> At the time a final order denying a petition under 28 U.S.C. § 2254 or § 2255 is issued, the district judge will make a determination as to whether a certificate of appealability should issue. If the district judge issues a certificate, the judge must state the specific issue or issues that satisfy the criteria of 28 U.S.C. § 2253. If an order denying a petition under § 2254 or § 2255 is accompanied by an opinion or a magistrate judge's report, it is sufficient if the order denying the certificate references the opinion or report.

Third Circuit L.A.R. 22.2.   Under 28 U.S.C. § 2253, a petitioner seeking a certificate of appealability "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."   *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As discussed above, Defendant has raised no viable claims, and we do not believe that any reasonable jurist would disagree with our assessment.   Therefore, a certificate of appealability will not issue.

## IV.     CONCLUSION

For the foregoing reasons, Petitioner's Motion is denied in full.   This Court finds no basis to hold an evidentiary hearing or issue a certificate of appealability.

An appropriate Order follows.


BY THE COURT:


_____

**R. BARCLAY SURRICK, J.**

21